UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | |
|---|---|
| PAUL KALDY, d/b/a URFIGHT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:16-CV-54 |
| | ) |
| URSHOW.TV, INC., URSHOW.TV | ) |
| PRODUCTIONS, INC., and UR-CHANNEL | ) |
| BROADCASTING COMPANY, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

This matter is before the Court on Defendants' Motion to Dismiss, or in the Alternative, Motion to Transfer [doc. 18]; Defendants' Brief in Support of the Motion [doc. 19]; and Plaintiff's Response in Opposition to the Motion [doc. 24]. For the reasons herein, the Court will deny the motion.

### I. BACKGROUND

Plaintiff Paul Kaldy ("Mr. Kaldy") claims to be the proprietor of a business entity known as "UrFight," [Am. Compl., doc. 12, ¶ 1], which "specializes in promoting Mixed Martial Arts" and "is dedicated to helping fighters, gyms & promoters get noticed through graphic design, websites, signs, cards, along with T-Shirt and full color printing," [Screenshot, doc. 12-1, at 2]. Mr. Kaldy alleges that for several years he has used certain unregistered trademarks to promote, advertise, and sell UrFight's services and products to the public, and these unregistered trademarks include "It's UrFight – Win It!," "UrFight,"

"UrFightGear.com," and "UrFightSite.com." [Am. Compl. ¶¶ 12–15]. For one of these trademarks, "It's UrFight – Win It!," Mr. Kaldy has since secured federal registration from the United States Patent and Trademark Office for use in connection with "athletic apparel, namely, shirts, pants, jackets, footwear, hats and caps, [and] athletic uniforms," which qualify as Class 25 goods under the International Classification Schedule. [Trademark No. 4,520,258, doc. 12-2, at 2].[1] Mr. Kaldy maintains that he has "expended substantial sums in promoting [UrFight's] goods and services" under the four trademarks, which he claims have "become well known to the public as a distinctive indication of the source and origin of [UrFight's] products and services." [Am. Compl. ¶ 18].

According to Mr. Kaldy, Defendants Urshow.tv, Inc.; Urshow.tv Productions, Inc.; and UR-Channel Broadcasting Company ("Defendants") promote, produce, and broadcast martial arts events through the television and the internet and, in doing so, use the trade name "URFight" and other similar trade names. [*Id.* ¶¶ 19–20]. Mr. Kaldy alleges that these trade names are not only "confusingly similar" but also "identical to" his own trademarks. [*Id.* ¶¶ 20]. As a result, Mr. Kaldy has brought this action, in which he claims trademark infringement under 15 U.S.C. § 1114 of the Trademark Act of 1946 (Lanham Act) and under Tennessee common law (Count I), unfair competition under 15 U.S.C. § 1125(a) of the Lanham Act and under Tennessee common law (Count II), and violations of subsections 47-18-104(b)(1)–(5), (27) of the Tennessee Consumer Protection Act ("TCPA"). [Am. Compl. ¶¶ 6, 37]. Defendants now seek dismissal of all three counts, and

---

[1] The International Classification Schedule is codified in 37 C.F.R. § 6.1, under which Class 25 goods include "[c]lothing, footwear, [and] headgear."

in the alternative, they request that the Court transfer this case to the District of Delaware under 28 U.S.C. § 1404(a). [Mot. to Dismiss or Transfer at 1].

## II. MOTION TO DISMISS

Under Federal Rule of Civil Procedure 8(a)(2), "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." In determining whether to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6), a court accepts the factual allegations in the complaint as true and construes them in a light most favorable to the non-moving party. *See Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," however, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In addition, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### A. Trademark Infringement under § 1114

Under § 1114(1)(a)–(b), no person, without the consent of the registered holder of a trademark, may:

(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or

(b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive[.][2]

To prevail on a claim for trademark infringement under § 1114, a plaintiff must show "(1) that it owns a valid, protectable trademark; (2) that the defendant used the trademark in commerce and without the registrant's consent; and (3) there was a likelihood of consumer confusion." *Ford Motor Co. v. Heritage Mgmt. Grp., Inc.*, 911 F. Supp. 2d 616, 621 (E.D. Tenn. 2012) (quotation omitted). The third element, a likelihood of consumer confusion, is "[t]he touchstone of liability under § 1114," *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 280 (6th Cir. 1997), and it requires a showing of confusion as to the origin of the goods or services that each party offers in the marketplace, *Therma-Scan, Inc. v. Thermoscan, Inc.*, 295 F.3d 623, 629 (6th Cir. 2002); *see Homeowners Grp., Inc. v. Home Mktg. Specialists, Inc.*, 931 F.2d 1100, 1107 (6th Cir.

---

[2] Under § 1114(1)(a)–(b), the term "person" includes "all individuals, firms, corporations, or other persons acting for the United States and with the authorization and consent of the United States, and any State, any instrumentality of a State, and any officer or employee of a State or instrumentality of a State acting in his or her official capacity," as well as "any nongovernmental entit[ies]." § 1114(1).

4

1991) ("The ultimate question [is] whether relevant consumers are likely to believe that the products or services offered by the parties are affiliated in some way.").

Defendants argue that Mr. Kaldy has not alleged sufficient facts to support a likelihood of confusion. [Defs.' Br. at 2–3]. Specifically, Defendants maintain that a likelihood of confusion is absent because they are "in the digital broadcasting industry," not the business of making athletic apparel—that is, "goods or services within class 25." [*Id.* at 3–4]. In response, Mr. Kaldy contends that any analysis concerning a likelihood of confusion involves "issue[s] of material fact to be determined by the court." [Pl.'s Resp. at 2]. As a result, Mr. Kaldy asserts that the dismissal of his claim under § 1114 is inappropriate because the Court has an obligation to refrain from resolving questions of material fact here at the pleading stage. [*Id.*].

As a general matter, the Court begins by noting that under Rule 12(b)(6) it is unable to consider a question of fact on a motion to dismiss. *See, e.g.*, *Ecclesiastical Order of the ISM of AM, Inc. v. IRS*, 725 F.2d 398, 403 (6th Cir. 1984) (Jones, J., concurring in part and dissenting in part); *Mike Vaughn Custom Sports, Inc. v. Piku*, 15 F. Supp. 3d 735, 753 (E.D. Mich. 2014). For more than three decades, courts in the Sixth Circuit have conducted a multi-factor analysis to determine whether a defendant's use of a trademark creates a likelihood of confusion among consumers. *See Frisch's Rests. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642, 648 (6th Cir. 1982) (setting out eight factors). An analysis under these factors requires a court to resolve both factual and legal questions. *See Wynn Oil Co. v. Thomas*, 839 F.2d 1183, 1186 (6th Cir. 1988) ("This Circuit considers the question of whether there is a likelihood of confusion a mixed question of fact and law.").

5

A court must first resolve the factual questions before it can address the legal questions. *See id.* (stating that after a court makes a finding as to the "foundational facts," it should then resolve the "legal question [of] whether . . . those facts constitute a 'likelihood of confusion'" (quotation omitted)).

Although Defendants acknowledge that a likelihood of confusion "is typically regarded as a question of fact that is not amenable to resolution on a Rule 12(b)(6) motion," they propose that an exception exists "when the goods are so unrelated as a matter of law that dismissal at the pleadings stage is appropriate." [Defs.' Br. at 3]. Defendants invite the Court to embrace this exception but have not noted any court within this circuit that has recognized it. Instead, Defendants rely on two cases from outside this circuit—one from the Ninth Circuit Court of Appeals and one from the Eastern District of Virginia—in proposing that the Court's espousal of this exception is proper. [*Id.*]. Because they supply the Court with no case in which a court in this circuit has addressed, let alone endorsed, this exception, the Court will not apply it. *Cf. Burden v. Check into Cash of Ky., LLC*, 267 F.3d 483, 489 (6th Cir. 2001) (finding that the district court erred by adopting the view of the Ninth Circuit without reconciling it with precedent from the Sixth Circuit). The Court instead will adhere to the Sixth Circuit's instruction—an instruction that the Sixth Circuit pronounced without limitation—that factual issues underlie the question of whether a likelihood of confusion exists among consumers. Based on this instruction, the Court will refrain from dismissing Mr. Kaldy's claim under § 1114, an act that would require it to overstep its bounds by resolving factual issues here at the pleading stage.

## B. Trademark Infringement under Tennessee Common Law

"Under Tennessee common law regarding trademark and unfair practices, like federal trademark statutes, the ultimate question is whether the defendant has created a likelihood of confusion among consumers." *McDonald's Corp. v. Shop at Home, Inc.*, 82 F. Supp. 2d 801, 817 (M.D. Tenn. 2000) (citing *Men of Measure Clothing, Inc. v. Men of Measure, Inc.*, 710 S.W.2d 43, 47 (Tenn. Ct. App. 1985)); *see Men of Measure*, 710 S.W.2d at 47 ("The ultimate test of infringement is whether the subsequent user's use of the same or similar mark would create a likelihood of confusion among consumers." (citations omitted)). In arguing for the dismissal of Mr. Kaldy's claim for trademark infringement under Tennessee common law, Defendants renew their assertion that dismissal is proper because "no consumer would be confused" in this case. [Defs.' Br. at 5]. In short, Defendants cling to their position that the question of whether consumers are prone to a likelihood of confusion is resolvable at the pleading stage.

Tennessee's courts, however, have articulated no distinction between the standard that governs a likelihood of confusion under Tennessee common law and that governs a likelihood of confusion at the federal level, namely under the Lanham Act. *In Men of Measure*, the Tennessee Court of Appeals considered whether a party infringed on another party's rights in a trademark, 710 S.W.2d at 45, and in conducting its analysis, it in fact relied on the Sixth Circuit's eight-factor test—in addition to a larger body of federal law—to determine whether a likelihood of confusion existed among consumers, *id.* at 47–48. Although the appellant contended that the court erred by applying federal law rather than state law because "federal and Tennessee case law differ" on the issue of trademark

7

infringement, the court stated that "there is nothing to suggest a divergence among federal law, Tennessee common law or general principles of trade-mark law." *Id.* at 48–49 (Sanders, J., concurring); *cf. Hamilton v. Stardust Theatre, Inc.*, No. M2001-00678-COA-R3-CV, 2002 WL 1284280, at *3 n.1 (Tenn. Ct. App. June 11, 2002) (acknowledging that the Tennessee legislature enacted a statutory framework for trademark infringement "with the express purpose of creating a system substantially consistent with the federal trademark statutes."); *see Gen. Conference Corp. of Seventh-Day Adventists v. McGill*, 624 F. Supp. 2d 883, 891 (W.D. Tenn. 2008) ("Tennessee . . . common law infringement claims are analyzed under the same standards as federal claims." (citing *Microsoft Corp. v. Sellers*, 411 F. Supp. 2d 913, 920 (E.D. Tenn. 2006))). Because the relevant case law in Tennessee is in keeping with how the federal courts interpret the Lanham Act, the Court sees no reason to stray from the federal viewpoint that a likelihood of confusion among consumers is a mixed factual and legal question—and therefore not appropriate for adjudication here at the pleading stage.

Defendants also urges the Court to dismiss Mr. Kaldy's common law claim because they say the marks are generic and therefore not protectable, [Defs.' Br. at 5], but as with their previous argument, this argument would require the Court to resolve an issue of fact here at the pleading stage, *see Bath & Body Works, Inc. v. Luzier Personalized Cosmetics, Inc.*, 76 F.3d 743, 748 (6th Cir. 1996) ("Whether a name is generic is a question of fact." (citation omitted)); *see also Gen. Conference Corp. of Seventh-Day Adventists*, 624 F. Supp. 2d at 892. The question of whether a trademark is generic is factual in nature because it overlaps with the same analysis that underlies a court's determination of consumer-

8

related confusion. *See Champions Golf Club, Inc. v. Champions Golf Club, Inc.*, 78 F.3d 1111, 1117 (6th Cir. 1996) ("[W]hether a mark is . . . generic . . . is but one of the elements to be considered in determining whether confusion is likely to result." (internal quotation marks and quotation omitted)); *see also Gen. Conference Corp. of Seventh-Day Adventists*, 624 F. Supp. 2d at 892 ("The appropriate test for whether a mark is generic is 'whether the public perceives the term primarily as the designation of the article.'" (internal quotation marks omitted) (quoting *Bath & Body Works*, 76 F.3d at 748)). The Court must therefore refrain from dismissing Mr. Kaldy's common law claim for trademark infringement, which is comprised of factual issues.

### C. Unfair Competition under § 1125(a) and Tennessee Common Law

Defendants argue that Mr. Kaldy's claims for unfair competition under § 1125(a) and under Tennessee common law warrant dismissal because—like the claims for trademark infringement—they require a showing of a likelihood of confusion among consumers. [Defs.' Br. at 6]. The Court agrees that Mr. Kaldy's claim under § 1125(a) requires a determination of whether a likelihood of confusion exists among consumers. *See Audi AG v. D'Amato*, 469 F.3d 534, 542 (6th Cir. 2006) ("Under the Lanham Act, we use the same test to decide whether there has been trademark infringement, unfair competition, or false designation of origin: the likelihood of confusion between the two marks." (citation and internal citation omitted)). The Court also agrees that Mr. Kaldy's common law claim under Tennessee law requires a determination of whether a likelihood of confusion exists among consumers. *See Gen. Conference Corp. of Seventh-Day Adventists*, 624 F. Supp. 2d

9

at 891 ("Tennessee unfair competition claims . . . are analyzed under the same standards as federal claims." (citation omitted)); *McDonald's*, 82 F. Supp. 2d at 816 ("The same analysis that applies to the federal Lanham Act claims also applies to state claims of unfair competition under Tennessee common law[.]"). Because each of Mr. Kaldy's claims for unfair competition, like the claims for trademark infringement, requires the Court to engage in an analysis under the likelihood-of-confusion test—an inquiry that is at least partly fact-intensive, *see Wynn Oil*, 839 F.2d at 1186—the Court is unable to delve into them here and must decline Defendants' request to dismiss these claims.

### D. Violations of the Tennessee Consumer Protection Act

Recycling the same argument, Defendants maintain that Mr. Kaldy's claims under the TCPA are subject to dismissal because "an essential element" of these claims is a likelihood of confusion. [Defs.' Br. at 7]. A likelihood of confusion among consumers is indeed an essential element of Mr. Kaldy's claims under the TCPA. *See Sellers*, 411 F. Supp. 2d at 920 ("Likelihood of customer confusion is the essence of the test for a violation of the Tennessee Consumer Protection Act." (citation omitted)); *McDonald's*, 82 F. Supp. 2d at 816 ("The same analysis that applies to the federal Lanham Act claims also applies to . . . violations of the Tennessee Consumer Protection Act[.]"). As with Defendants' previous arguments, however, Defendants' argument here does not support dismissal because, again, the Court at this stage must not address the factual issues that are part and parcel of the likelihood-of-confusion test.

10

## III. SECTION 1404(a)

Venue is the "geographic specification of the proper court or courts for the litigation of a civil action that is within the subject-matter jurisdiction of the district courts in general." 29 U.S.C. § 1390(a). Section 1404(a) states that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." Section 1404(a)'s purpose is to protect litigants, witnesses, and the public from unnecessary expense and inconvenience. *Inghram v. Univ. Indus. Gases, Inc.*, No. 1:05-CV-19, 2006 WL 306650, at *4 (E.D. Tenn. Feb. 8, 2006) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)).

A district court's "first concern" when considering a motion to transfer under § 1404(a) is "whether the action 'might have been brought,' in the first instance in the transferee district." *Weltmann v. Fletcher*, 431 F. Supp. 448, 450 (N.D. Ohio 1976) (footnote omitted) (citing *Cont'l Grain Co. v. FBL-585*, 364 U.S. 19, 22 (1960)); *see One StockDuq Holdings, LLC v. Becton, Dickerson, & Co.*, 2013 WL 1336726, No. 2:12-cv-03307-JPM-tmp, at *2 (M.D. Tenn. Mar. 18, 2013) ("[U]nder § 1404(a), a court must first find that the civil action could have been brought in the requested transferee district." (citing *Reese v. CNH Am. LLC*, 574 F.3d 315, 320 (6th Cir. 2009))). An action might have been brought in the transferee district if (1) the court in that district has subject matter jurisdiction; (2) the defendant is amenable to service of process from that court; and (3) venue is proper there. *McLouth Steel Corp. v. Jewell Coal & Coke Co.*, 432 F. Supp. 10, 11 (E.D. Tenn. 1976). If a court determines that an action might have been brought in the

11

transferee district, the issue then becomes "whether transfer is justified under the balance of the language of § 1404(a)." *Jamhour v. Scottsdale Ins. Co.*, 211 F. Supp. 2d 941, 945 (S.D. Ohio 2002); *see McKee Foods Kingman v. Kellogg Co.*, 474 F. Supp. 2d 934, 936 (E.D. Tenn. 2006) ("First, a defendant must identify an alternate forum in which venue is proper. Next, the defendant must show that the convenience of the parties and witnesses, and the interest of justice, warrant transfer." (citations omitted)).

A district court "has broad discretion to grant or deny a motion to transfer [a] case under § 1404," *Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir. 1994) (quotation omitted), "according to an 'individualized, case-by-case consideration of convenience and fairness,'" *Stewart Org., Inc. v. Richo Corp.*, 487 U.S. 22, 29 (1988) (quotation omitted). Although the federal courts do not have a "definitive formula" or "comprehensive list of factors" that they employ when making this case-by-case consideration of convenience and fairness, *Inghram*, 2006 WL 306650 at *5, they do consider various private and public interests, *see Moses v. Bus. Card Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991), which, in this circuit, include:

> (1) convenience of witnesses; (2) availability of judicial process to compel the attendance of unwilling or uncooperative witnesses; (3) location of the relevant documents or records, and the relative ease of access to sources of proof; (4) residence and convenience of the parties; (5) relative financial means of the parties; (6) locus of the operative facts and events that gave rise to the dispute or lawsuit; (7) each forum's familiarity with the governing law; (8) the deference and weight accorded to the plaintiff's choice of forum; and (9) trial efficiency, fairness, and the interests of justice based on the totality of the circumstances.

*Ingraham*, 2006 WL 306659 at *5; *see Reese*, 574 F.3d at 320. This list of factors is not exhaustive,[3] and the Court may consider "all relevant factors that may make the litigation easy, less expensive, and expeditious." *Dorsey v. Hartford Life & Accident Ins. Co.*, No. 1:08-cv-243, 2009 WL 703384, at *3 (E.D. Tenn. Mar. 16, 2009).

### A. Might Have Been Brought

Mr. Kaldy concedes that this action might have been brought in the District of Delaware. [Pl.'s Resp. at 7]. The Court will therefore now proceed to the second leg of the analysis, under which the Court will address the factors that Defendants raise regarding convenience and the interest of justice.

### B. Convenience and the Interest of Justice

When considering convenience and the interest of justice, the Court must keep in mind that at the outset a plaintiff's choice of venue typically is entitled to greater weight than other factors. *See Maberry v. Nuclear Fuel Servs.*, No. 3:13-CV-499, 2013 WL 5560318, at *2 (E.D. Tenn. Oct. 7, 2003) ("[T]he plaintiff's original choice of forum is normally given 'considerable weight,' [with] 'the balance of convenience, considering all the relevant factors, [needing to] be strongly in favor of a transfer before such will be

---

[3] These factors are an amalgamation of the public and private interests that underlie the doctrine of *forum non conveniens*. *See Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 134 S. Ct. 568, 580 (2013) ("Section 1404(a) is merely a codification of the doctrine of *forum non conveniens*" and "both § 1404(a) and the *forum non conveniens* doctrine . . . entail the same balancing-of-interests standard" (citations omitted)); *Dowling v. Richardson-Merrell, Inc.*, 727 F.2d 608, 612 (6th Cir. 1984) (describing the "relevant public interest factors" and "private interest considerations" that comprise an analysis under the doctrine of *forum non convenience* (citations omitted)).

13

granted'" (quotation omitted)); *see also W. Am. Ins. Co. v. Potts*, No. 89-6091, 1990 WL 104034, at *2 (6th Cir. July 25, 1990) ("Foremost consideration must be given to the plaintiff's choice of forum."); *Weinstein v. Friedman*, 859 F. Supp. 786, 788 (E.D. Pa. 1994) ("[A] plaintiff's choice of forum is a paramount consideration which should not be lightly disturbed and thus the court should hold defendants to establishing a strong preponderance in favor of transfer." (citations omitted)); *but see Maberry*, 2013 WL 5560318 at *4 (stating that "courts have indicated that a plaintiff's choice [of forum] is less important when the plaintiff does not reside in the forum" (citation omitted)). Unless a defendant shows that convenience and the interest of justice "strongly favor" transfer by a preponderance of the evidence, a plaintiff's choice of forum is generally decisive. *See Inghram*, 2006 WL 306650 at *4 (quotations omitted); *see Hoffman v. Blaski*, 363 U.S. 335, 366 (1960) ("[T]he defendant must satisfy a very substantial burden of demonstrating where 'justice' and 'convenience' lie, in order to have his objection to a forum of hardship . . . respected.").

*1. Mr. Kaldy's Choice of Forum*

Mr. Kaldy is a resident of the Eastern District of Tennessee and does business in this district; he is at home here and not a foreign entity. [Am. Compl. ¶ 1]. The Court will therefore treat his choice of forum in this district with fidelity, and Defendants must show that the remaining factors strongly favor transfer by a preponderance of the evidence. *Inghram*, 2006 WL 306650 at *4.

14

*2. Convenience*

The convenience of the witnesses is "considered to be the most important factor when determining which forum is the most convenient," *KANL, LLC v. Savage Sports Corp.*, No. 3:13-CV-265-TAV-CCS, 2014 WL 1745443, at *3 (E.D. Tenn. Apr. 30, 2014) (quotation omitted), and it requires the party seeking transfer to show that the witnesses will be "severely inconvenienced" if the litigation were to proceed in the plaintiff's chosen forum, *Malibu Boats*, No. 3:13-CV-656-TAV-HBG, 2014 WL 202379, at *5 (E.D. Tenn. Jan. 16, 2014) (quotation omitted); *KANL*, 2014 WL 1745443 at *3 (quotation omitted); *see Hoffman*, 363 U.S. at 366 (citing the defendant's "very substantial burden" in objecting to a plaintiff's chosen forum).

Defendants make few if any strides in establishing that the convenience of the parties or the witnesses favors transfer to the District of Delaware. In attempting to show that litigation in the Eastern District of Tennessee is inconvenient for them, they present their argument to the Court in one sentence, in which they state: "It is not convenient for the Defendants or their potential witnesses to travel to the Eastern District of Tennessee to litigate this case." [Defs.' Br. at 9]. A party's need to travel during litigation, however, is relatively commonplace and is not an occurrence that is indicative, in and of itself, of severe inconvenience stemming from a lawsuit in a particular forum: "Unless all parties reside in the selected jurisdiction, any litigation will be more expensive for some than for others." *Moses*, 929 F.2d at 1139. Defendants also do not account for the fact that the change they request in venue would force Mr. Kaldy to absorb the same travel-related inconvenience that Defendants wish to avoid—a shift in inconvenience between the parties that the Court

15

is simply unable to allow under § 1404(a). *See Van Dusen*, 376 U.S. at 645–46 ("Section 1404(a) provides for transfer to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient."); *see also McKee Foods*, 474 F. Supp. 2d at 942 ("A transfer of venue under 28 U.S.C. § 1404(a) must render litigation more convenient as a whole; it cannot merely shift inconvenience between the parties." (citing *id.*)).

In addition—and maybe more importantly—Defendants do not identify the witnesses who they claim will suffer inconvenience from litigation in this district or describe the testimony that they will offer. *See Smith v. Kyphon, Inc.*, 578 F. Supp. 2d 954, 963 (M.D. Tenn. 2008) ("[T]he party seeking the transfer must clearly specify the essential witnesses to be called and must make a general statement of what their testimony will cover" (citation omitted); *Thomas v. Home Depot, U.S.A., Inc.*, 131 F. Supp. 2d 934, 937 (E.D. Mich. 2001) (stating that "the parties should provide each witness's name and outline of what material testimony that witness would provide"). As a result, the Court has no basis to determine how many witnesses are likely to encounter inconvenience, whether they would be relevant and material witnesses in this litigation, or whether they are employee witnesses or non-party witnesses—all important determinations on a motion to transfer under § 1404(a). *See Oakley v. Remy Int'l, Inc.*, No. 2:09-0107, 2010 WL 503125, at *4 (M.D. Tenn. Feb. 5, 2010) (noting that the convenience of the witnesses is more than a head count and includes "a consideration of the importance of each witness"); *see also FIMCO Servs., LLC v. FirstMerit Bank, N.A.*, No. 1:10-cv-72, 2010 WL 5184885, at *10 (E.D. Tenn. Dec. 15, 2010) ("Convenience of non-party witnesses, as opposed to employee witnesses, is one of the most important factors in the transfer analysis[.]" (quotation

16

omitted)). Defendants therefore fall well short of showing that the factor of convenience favors transfer to the District of Delaware.

### *3. Locus of Operative Facts*

Lastly, in perfunctory fashion, Defendants also argue that transfer is appropriate because "there is no real nexus to the Eastern District of Tennessee," a statement the Court interprets as Defendants' attempt to address the locus of operative facts, or the location of the events giving rise to this lawsuit. [Defs.' Br. at 9–10]. Simply, Defendants do not support their argument with legal or factual enhancement, citing no case law. The Court is not at liberty to consider their argument without some effort at analysis that shows why or how the locus of operative facts in this case actually favors transfer to the District of Delaware. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." (quotation omitted)); *see also* E.D. Tenn. L.R. 7.1(b) (requiring briefs to contain both "the factual and legal grounds which justify the ruling sought from the Court"). In short, Defendants' argument for transfer—both here and throughout Defendants' brief—is incomplete, and Defendants do not establish that transfer, based on the locus of operative facts or any other factor, is proper.

## IV. CONCLUSION

Defendants' arguments for dismissal would require the Court to resolve factual issues here at the pleading stage, and therefore they are not viable. In addition, Defendants' pursuit of transfer under § 1404(a) fails not only because it is incomplete but also because none of the factors—that is, the factors that Defendants identify for the Court—support transfer to the District of Delaware. Defendants' Motion to Dismiss, or in the Alternative, Motion to Transfer [doc. 18] is therefore **DENIED**. Defendants **SHALL** serve a responsive pleading within fourteen days from the date of this Order.

**IT IS SO ORDERED.**

ENTER:

s/ Leon Jordan
United States District Judge